NELLIE TOKMAKIAN *vs.* BESSIE FRITZ.

JULY 21, 1949.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

O'CONNELL, J.   This action of trespass on the case for slander was tried in the superior court before a justice sitting with a jury, which returned a verdict for the plaintiff for $400.   It is here on defendant's bill of exceptions, which consists of exceptions to certain evidentiary rulings

of the trial justice, to the refusal of said justice to give to the jury certain instructions as requested by the defendant, and to the denial of defendant's motions for a directed verdict and for a new trial.

The first count of the declaration charges the use of the words "drunken driver" while the second count charges that defendant referred to the plaintiff as an "Armenian nigger." At the conclusion of plaintiff's evidence the trial justice granted defendant's motion for a nonsuit as to the second count, and the case was submitted to the jury on the first count only.

The plaintiff is a middle-aged woman of Armenian extraction and the defendant, an older woman, is of Swedish descent. Plaintiff presented testimony to the following effect. She and the defendant were neighbors living on Central avenue in the city of Pawtucket in this state. About a year and a half before the incident complained of, defendant's daughter, Mrs. Nellie Gaff, and her family, who were living in the plaintiff's house, had been evicted therefrom on the ground of a nuisance; thereafter they lived with defendant in the house adjoining plaintiff's property and plaintiff claimed there was an unfriendly feeling between the parties which manifested itself from time to time.

Between 4 and 4:30 o'clock in the afternoon of June 12, 1947, while plaintiff was in her own yard, she overheard her first-floor tenant, Albert Hargreaves, talking with defendant. She claimed that she overheard the latter's remarks addressed to Mr. Hargreaves to the effect that plaintiff "wasn't Armenian and didn't belong in that section." The plaintiff then walked over to the defendant and called her a "trouble-maker" and a "dirty lady."

Plaintiff testified that when she looked toward the defendant, the latter stated that she knew all about her, that she was a "drunk driver" and an "Armenian nigger." Plaintiff's son Aram and William Caldwell, a friend who was visiting him, were both near an open window in plaintiff's

house and claimed to have overheard defendant address the plaintiff in the language alleged by her. There was testimony that plaintiff owned and operated an automobile, and held a driver's license. Plaintiff claimed that her health was affected; that she was obliged to consult a physician; and that she was shunned by her friends and neighbors, who had heard about the name calling which is made the basis of this suit.

The defendant and four witnesses, including plaintiff's tenant Albert Hargreaves, testified to the conversation between plaintiff and defendant, and they all denied that defendant had used the words alleged in the declaration. Both plaintiff and defendant testified that they had not spoken to each other since the date of the dispute involved herein.

We have examined the exceptions of the defendant which relate to questions involving plaintiff's reputation, to which the trial justice sustained plaintiff's objections. Since damage to her reputation was the gist of the plaintiff's claim, evidence of such reputation was clearly admissible in the instant case. But the inquiry must be confined to general character or reputation. *Folwell* v. *Providence Journal Co.*, 19 R. I. 551.

The questions objected to were not supported by a proper foundation. Three of them were asked of a witness who had testified that she knew nothing about the plaintiff and that she had never spoken to her. She was then asked whether the plaintiff was considered to be a woman like the defendant, that is, whether she had the same reputation. Then followed the question: "what do you consider the reputation of Mrs. Tokmakian to be in the neighborhood?" Another question asked was: "Have you spoken to any people about Mrs. Tokmakian, and have you any idea of what her reputation in the neighborhood is?" Such questions on the basis of the witness' admitted lack of knowledge were highly objectionable and the plaintiff's objections thereto were properly sustained. The other

exceptions of the defendant relating to this line of inquiry are equally untenable, and all such exceptions are overruled.

There is no merit in defendant's exception to the denial of her motion for a directed verdict. The evidence was decidedly conflicting, the defendant and her witnesses flatly denying the utterance of the words alleged by the plaintiff. There was evidence from which the jury might find that such words, if uttered at all, were used in the heat of sudden anger as an epithet or expletive, without any intent on the part of the defendant to charge the commission of any crime or offense involving moral turpitude or which might bring ignominy or disgrace upon the plaintiff. If uttered in such circumstances the words charged would not be actionable *per se*. *Morrissette* v. *Beatte*, 66 R. I. 73. On the other hand there was testimony from which such words if uttered might be held to charge the commission of a statutory offense involving ignominy and disgrace. In such circumstances it was the duty of the trial justice to submit the case to the jury in the first instance under proper instructions. This exception is overruled.

As to the request for instructions to the jury, we are of the opinion that the trial justice was not guilty of any reversible error in refusing them. Though not given in the express language requested by the defendant, the substance of these requests was fairly covered by the general charge. We find that the charge as given was a fair statement of the law applicable to the instant case, and all exceptions relating to requests for instructions are overruled.

The last exception is to the denial of defendant's motion for a new trial. It is based upon the usual grounds that the verdict is against the law and the evidence and the weight thereof and upon the additional ground that the damages awarded are excessive. In passing upon this motion the trial justice expressed the opinion that substantial justice had been done between the parties. He did not, however, specifically refer to the question of dam-

ages nor discuss the evidence with relation to the existence of malice or to the question of punitive damages, to both of which he had referred in his charge to the jury.

The plaintiff presented no evidence of any special damage upon which a monetary value could be placed. We find no evidence which would justify an award of punitive damages in this case. The undisputed evidence shows that the defendant did not address herself directly to the plaintiff, nor use the language complained of, until after the latter had called her a "trouble-maker" and a "dirty lady." Defendant's language appears, therefore, to have been provoked by such expressions on the part of the plaintiff which, though not actionable *per se,* were certainly objectionable and likely to provoke retaliatory language on the part of the defendant. In such circumstances it is difficult to impute malice to the defendant since she did not deliberately and maliciously seek out the plaintiff and publish the alleged slanderous words. Rather the plaintiff without reason started the argument with the defendant, who was talking peaceably with a third party, by addressing her first in the language above quoted.

The plaintiff's evidence showed a minimum of loss to her reputation. She had only a slight acquaintance with her neighbors and seldom visited others or entertained visitors at her home. She suffered little damage except to her own feelings. In the special circumstances of the instant case, considering the plaintiff's own provocative conduct and language, the fact that the language objected to was used during a back yard controversy, the station in life of the parties, the limited circles in which the plaintiff moved, and the absence of proof that plaintiff's reputation in such circles and in the locality in which she lived was damaged to any appreciable extent, we are of the opinion that the verdict of the jury in the sum of $400 is grossly excessive. In the absence of any special reference by the trial justice to the amount of damages in his denial of the motion for a new trial, and in the absence of evidence on which

502

malice or punitive damages could reasonably be founded, we are of the opinion that the plaintiff is entitled only to nominal damages of $1.

The defendant's exception to the denial of her motion for a new trial on the ground of excessive damages is sustained, all her other exceptions are overruled, and the case is remitted to the superior court with direction to grant defendant a new trial, unless the plaintiff shall, on or before August 4, 1949, file in the office of the clerk of the superior court a remittitur of all of the verdict in excess of $1. If such remittitur is filed, the superior court is ordered to enter judgment on the verdict as reduced by the remittitur.

*Arcaro, Carty & Belilove, Joseph B. Carty,* for plaintiff.

*Harold H. Winsten, Robinson, Robinson & Adelson,* for defendant.