CHARLES G. ALLEN, *Adm'r vs.* JOHN HANCOCK MUTUAL
LIFE INSURANCE COMPANY.

FEBRUARY 15, 1961.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Frost, JJ.

PAOLINO, J. This action of the case in assumpsit was brought to recover a sum of money alleged to be payable to the plaintiff as administrator of the estate of Herman R. Leonard, deceased, under a policy of insurance issued by the defendant on the life of said deceased. After a trial in the superior court the jury brought in a verdict for the plaintiff for the full amount of the policy. The case is before this court on the defendant's exceptions to the refusal of the trial justice to grant its requests for certain instructions and also on its exception to the denial of its motion for a new trial.

It appears from the evidence that on January 16, 1956, the insured, who was then 58 years of age, applied for the policy in question. On the same day he was given a physical examination by Dr. John J. Lury, one of defendant's examining physicians. Doctor Lury found nothing wrong with him and consequently he was satisfied that the proposed insured was a proper risk. On January 26, 1956 defendant issued an insurance policy in the sum of $1,000 payable to the insured's estate upon his death. On March 5, 1956, the insured died of coronary thrombosis.

The plaintiff was thereafter duly appointed administrator of the insured's estate. After defendant refused to make payment under the policy, plaintiff instituted the instant action. In addition to the general issue defendant filed special pleas alleging various misrepresentations by the insured in the application for the policy and also a defense of fraud. The defendant also served notice of its intent to prove the law of the Commonwealth of Massachusetts, specifically Mass. Annotated Laws, chap. 175, §186.

At the trial in the superior court defendant relied almost entirely upon the affirmative defense set up by it in its special pleas that in the application for the policy the insured

made certain false representations concerning his health. The application, which is incorporated in and made part of the policy, contained a number of questions relating to the past medical history of an applicant. In response to one of the questions the insured stated that he was then in good health. In reply to another question which inquired whether applicant ever had any of certain illnesses enumerated therein, including disease of the heart, the insured indicated by a check mark that in January 1948 he had been ill with pleurisy and that he had fully recovered therefrom.

In reply to two other questions inquiring whether he had any illness, injury, or operation within the past five years and whether he had consulted, been treated or examined by any physician or other practitioner, or been treated or confined in any hospital, sanitarium or clinic within such time, the insured answered "Yes," but in explaining his affirmative reply he stated that about three years prior thereto he had an elbow bruise which had disabled him but from which he had fully recovered. The defendant contended in the superior court, as it does in this court, that the foregoing statements were misrepresentations made with actual intent to deceive and that the matters misrepresented increased the risk of loss.

The plaintiff testified that the insured had resided with him almost continuously from 1947 until his death; that he was out of work a couple of weeks in November 1955; that as far as he knew the insured was then suffering from bronchial pneumonia; and that he was visited by Dr. Paul Holzinger on that occasion. After introducing in evidence the insurance policy, the death certificate and other pertinent documents, plaintiff rested.

The defendant presented several witnesses and introduced certain exhibits to establish its defense. Doctor Lury explained the examination he made of the insured on January 16, 1956. He stated that his examination failed to disclose a heart condition; that coronary heart disease is a

tricky disease and the best way of telling whether someone has it is by a cardiogram; that as a result of the examination which he made he concluded that the insured was a proper risk; and, finally, that it was possible for a person to live twenty years after a coronary thrombosis.

Doctor Holzinger was also called as a witness by defendant. He testified in substance that on November 11, 1955 the insured was treated by him at his office; that after the examination he made a tentative diagnosis of cardiovascular disease of undetermined duration and suggested an electrocardiogram; that on November 22, 1955 the insured visited him at his office and was treated for bronchitis of two weeks' duration; that on December 3, 1955 the insured was treated for a condition diagnosed as angina pectoris of undetermined duration; that on December 5, 1955 he treated him for bronchial pneumonia; that during a social call on the insured on February 4, 1956 he observed that the insured was ailing with a cardiovascular disease; and that he again saw him on March 5, 1956 when he died as a result of a coronary thrombosis.

The defendant also called as a witness Dr. Frank J. Kefferstan, its assistant medical director. He testified that in passing upon the application he would have rejected it if any doctor had indicated a cardiovascular disorder because such condition would increase the risk of loss.

It is agreed that the policy is governed by Massachusetts law. The trial justice instructed the jury accordingly and read to them the following provision of Mass. Annotated Laws, chap. 175, §186: "Misrepresentation by Insured; Effect. No oral or written misrepresentation or warranty made in the negotiation of a policy of insurance by the insured or in his behalf shall be deemed material or defeat or avoid the policy or prevent its attaching unless such misrepresentation or warranty is made with actual intent to deceive, or unless the matter misrepresented or made a warranty increased the risk of loss."

In her instructions the trial justice charged that by its affirmative defense defendant had the burden of proving that there was an actual intent to deceive or that the matter misrepresented increased the risk of loss. She further charged that whether the representations in question were made with actual intent to deceive or the matters misrepresented increased the risk of loss were questions of fact for the jury to decide.

We shall consider only defendant's exceptions 10, 12 and 13. The remaining exceptions, having been neither briefed nor argued, are deemed to be waived.

Under exceptions 10 and 12 the defendant contends that the trial justice committed prejudicial error in refusing to give certain instructions requested by it. The instructions requested related to the question whether the insured's knowledge or good faith were material if there had been an increase in the risk of loss. After carefully reading the entire charge we are satisfied that the instructions requested by defendant were covered by the trial justice in her general charge. Her refusal was therefore proper. Exceptions 10 and 12 are overruled.

Under exception 13 the defendant contends that the verdict is against the law, the evidence and the weight thereof; that the verdict does not respond to the true merits of the controversy; that the trial justice misconceived the evidence; and that consequently she erred in denying its motion for a new trial. After carefully examining the entire record we find nothing therein which indicates that the trial justice misconceived or overlooked any material evidence.

In passing on the question whether the insured had actually intended to deceive by the answers he made to the questions in the application, the trial justice correctly observed that there was no competent evidence indicating that the insured knew or was told that he had a heart condition. And on the issue of whether the risk had been increased by the representations in question, the trial justice found

that there was a conflict of evidence on such issue. Doctor Kefferstan stated that the nondisclosure of the heart condition increased the risk; that such a condition would have a tendency to shorten life; and that if defendant had this information it would not have assumed the risk. Doctor Lury, on the other hand, testified that a person with such a condition might live a long time.

After reviewing the evidence and the law applicable thereto, the trial justice concluded that the defendant had not sustained the burden of proof in affirmatively proving either of the requirements of the statute as to actual intent to deceive or increase the risk of loss. Whether the statements and answers in the application were incorrect, and whether, if they were incorrect, the misrepresentations were made with actual intent to deceive, or, if not so made, whether the matter misrepresented increased the risk of loss, were all questions of fact to be submitted to the jury in the circumstances. *Levie* v. *Metropolitan Life Insurance Co.*, 163 Mass. 117, 119. But the burden of proof on such questions was on the defendant. *Smardon* v. *Metropolitan Life Insurance Co.*, 243 Mass. 599. After careful consideration we cannot say that the trial justice was clearly wrong in denying the defendant's motion for a new trial. Exception 13 is overruled.

All of the defendant's exceptions are overruled, and the case is remitted to the superior court for entry of judgment on the verdict.

*Thomas H. Needham*, for plaintiff.

*Hurley, Moriarty & Moakler, John W. Moakler, John F. Sherlock, Jr.*, for defendant.