249 A.2d 904.

CHRISTOPHER J. COOPER *vs*. THE HOUSING AUTHORITY OF THE CITY OF NEWPORT, RHODE ISLAND.

FEBRUARY 7, 1969.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

JOSLIN, J. This is a petition for the assessment of damages for the taking of a parcel of real estate for housing purposes by the Housing Authority of the City of Newport pursuant to G. L. 1956, title 45, chapter 25. A jury in the superior court assessed damages at $5,100 plus interest. After judgment in that amount had been entered, the petitioner's motion for a new trial was granted unless the respondent would consent to an additur of $1,900 with interest. The case is here on the petitioner's appeal and on the respondent's cross-appeal.

The petitioner's property, which had been in his family since 1935, was located at the intersection of Chapel and DeBlois Streets in Newport. Although in a residential zone, the 5,017 square-foot-lot and the buildings situated thereon had been used for more than 30 years as a sheet metal shop, a legal nonconforming use under the Newport zoning ordinance. On September 10, 1965, the property was condemned. When the parties were unable to agree on its value, petitioner brought this action in the superior court for the assessment of damages by a jury for the taking.

It was agreed at a pretrial hearing that "* * * all steps and proceedings required to be taken by the two parties here were duly taken," and at the trial the experts for each side agreed that for purposes of this case the buildings located on the premises had a fair market value on the date of condemnation of $4,500. The only substantial question which then remained was the value of the land and building as a unit. On its resolution the experts were in sharp disagreement. Peter A. Laudati, Jr., who appeared for petitioner, appraised the land and building as a unit at $10,000 whereas Louis P. Virgadamo, respondent's expert, testified that its fair market value was $5,100. The jury accepted Virgadamo's version and their verdict was for $5,100. When

thereafter petitioner's motion for a new trial was granted unless the respondent would agree to an additur of $1,900 with interest, petitioner appealed and thereupon respondent filed a claim of cross-appeal. We consider the appeal and the cross-appeal separately.

## The Petitioner's Appeal

His first assignment is to the ruling which prevented Laudati, his expert, from testifying concerning the appraisals he had made of various estate, beach and residential properties located in the Ocean Drive area of Newport. That ruling was made after the witness had already qualified as an expert by virtue of extensive testimony concerning his educational background, his years of experience as an appraiser and as a witness to valuation questions, and his familiarity and appraisal experiences with Newport property.

The petitioner's argument, in substance, is that, to restrict his attempt to develop fully Laudati's background and experience in real estate matters denied him the opportunity of establishing that Laudati was so preeminently qualified that his opinion might weigh more heavily with the jury than that of one whose credentials were less impressive. There is support for that position. *Wilson* v. *United States*, 350 F.2d 901; *Wolff* v. *Commonwealth of Puerto Rico*, 341 F.2d 945. Apart from any considerations of whether in this case the qualification process was unduly protracted, petitioner's argument might weigh heavily in a context where the excluded testimony bore some reasonable relationship to the ultimate question involved. Here, however, how Laudati might have appraised estate, beach, or residential properties in Newport's most exclusive area had little if any relevance to his expertise in fixing the value of

a sheet metal shop situated in a dissimilar residential zone as a nonconforming use.[1]

The trial justice did not, therefore, abuse his discretion when he excluded the testimony, and abuse of discretion is the yardstick we apply in reviewing rulings on a witness's experiential qualifications. *Atlantic Refining Co. v. Director of Public Works,* 102 R. I. 696, 706, 233 A.2d 423, 429; *Waldman v. Shipyard Marina, Inc.,* 102 R. I. 366, 370, 230 A.2d 841, 843; *Redding v. Picard Motor Sales, Inc.,* 102 R. I. 239, 247, 229 A.2d 762, 767.

Next petitioner challenges the timeliness[2] of respondent's motion to strike so much of Laudati's testimony as concerned the sale of certain parcels of real estate which he said were comparable to the condemned premises. While that motion was addressed to testimony which had come in without objection during the presentation of petitioner's case, it was not made until after petitioner rested and during the presentation of respondent's case. Although petitioner then urged that the motion was untimely, he did not

---

[1]The questioning and colloquy with respect to the ruling was:

"Q. Have you had occasion to value any of the real estate located on the Ocean Drive in the City of Newport?

"A. Yes, sir, a great deal.

"Q. And for what reason?

"MR. CORCORAN: I'm going to object.

\* \* \*

"MR. BOYLE: I think I should be permitted to develop fully Mr. Laudati's qualifications.

"THE COURT: We won't bother with the Ocean Drive area. That's purely residential. We're dealing here with commercial or industrial, call it what you will, property, but certainly not residential. I'll sustain the objection to any testimony on Ocean Drive.

"MR. BOYLE: I also wish to make an offer of proof with respect to that, your Honor.

"THE COURT: All right. Your right is reserved to make an offer of proof."

[2]The objection as made by petitioner to respondent's motion was:

"MR. BOYLE: Well, I'm going to object at this point. It's much, much too late."

object when the trial justice, instead of then acting on the motion, took it under advisement, and said that he would defer ruling pending a further opportunity during the recess to study the rule on motions to strike. Later that same day, and after both sides had rested, the trial justice granted the motion.

We have referred to the setting surrounding the objection in order to make clear that it related solely to the timeliness of the motion to strike, rather than to its substance or to the time when the ruling was made. On the precise question thus raised, the general rule is that a motion to strike must be made contemporaneously with the admission of the evidence and that it is inappropriate when the testimony to which it is directed has been in response to questions to which no objections were interposed. *Bell Co.* v. *Cote,* 84 R. I. 284, 123 A.2d 400; *McGarrity* v. *New York, N.H. & H. R.R.,* 25 R. I. 269, 55 A. 718. A lack of simultaneity between the admission of the evidence and the motion to strike is of no significance, however, where the evidence moved to be stricken, although apparently proper when admitted, is shown to be objectionable at some later stage of the proceedings. *Young* v. *New England Transp. Co.,* 97 R. I. 499, 199 A.2d 300.

This case falls within the exception rather than the rule, because here Laudati's testimony concerning comparable sales was unobjectionable when admitted, and its irrelevancy did not become apparent until after petitioner had rested and while respondent was presenting its case. A motion to strike was then timely, and it was then that it was made.

A further specification of error is to the trial justice's refusal to charge as requested by petitioner with respect to what constitutes a nonconforming use. That specification lacks merit inasmuch as the gist of what was requested was fairly and substantially covered, even though not in the

exact form and language sought, in the charge as given to the jury. *Allen* v. *John Hancock Mutual Life Ins. Co.*, 92 R. I. 213, 167 A.2d 752; *Tokmakian* v. *Fritz*, 75 R. I. 496, 67 A.2d 834; *Boettger* v. *Mauran*, 64 R. I. 340, 12 A.2d 285.

Finally petitioner says that the trial justice abused his discretion and therefore erred when he refused to allow respondent's expert to be cross-examined concerning a prior appraisal he had made of the condemned property. The respondent concedes that the rule in *Atlantic Refining Co.* v. *Director of Public Works, supra,* permits an expert who has testified to the fair market value of condemned property to be cross-examined concerning any prior and extra-judicial expressions pertaining to the value of that property. It argues, however, that the general rule should not apply in this case because here the prior appraisal was made before trial by an expert to whom it probably obligated itself to pay for the opinion given and the services rendered.[3] To allow cross-examination in such circumstances, it says, is to compel disclosure of what is tantamount to "work product" information.

It is, of course, true that the opinionative evidence of an expert, whether in a condemnation case or otherwise, is oftentimes protected from pretrial disclosure under deposition—discovery procedures.[4] The cases extending such protection are to be distinguished from those where what is sought is disclosure of the facts observed by a witness to an occurrence, for in litigation involving that kind of subject

---

[3] This is a different situation from what prevailed in *L'Etoile* v. *Director of Public Works,* 89 R. I. 394, 153 A.2d 173, where a witness who had appraised the condemned property, but had not testified on its behalf, was subpoenaed by petitioners and asked to give his opinion of the value of the property.

[4] Cases not allowing such pretrial disclosure are: *E. I. DuPont De Nemours & Co.* v. *Phillips Petroleum Co.,* 23 F.R.D. 237; *United States* v. *720 Bottles,* 3 F.R.D. 466; contra: *Bergstrom Paper Co.* v. *Continental Ins. Co. of City of New York,* 7 F.R.D. 548, 550.

matter the superior court rules of civil procedure contemplate that a litigant shall be able to secure the help of his adversary in developing his own side of the case. In the case of an expert, however, the protection against discovery, where granted, is customarily premised upon the theory that to permit one party by deposition to examine another's expert before trial would be like taking the latter's property without compensation and would therefore be unfair. *Lewis* v. *United Air Lines Transp. Corp.*, 32 F. Supp. 21, 23. That rationale, however, lacks pertinence in a case like this. This was not a pretrial attempt to ascertain the basis upon which the opposing party intended to proceed. Neither was it an attempt, as in *L'Etoile* v. *Director of Public Works, supra,* note 3, to ascertain the opinion of an expert employed but not called as a witness by the opposition. Here the expert actually testified, and to compel disclosure of what at an earlier time he might have told his client was not unfair. Once he testified, the overriding consideration became the right of the opposite party to cross-examine in order to develop the facts in the case and to test the witness for possible bias or prejudice, or upon his ability to recollect. *Atlantic Refining Co.* v. *Director of Public Works, supra.*

While it was error for the trial justice to prevent inquiry concerning the prior appraisal, we cannot at this stage of the proceedings say that the exclusion was prejudicial. Prejudice turns upon whether the difference between the opinion given from the witness stand and that given prior to trial was substantial or insubstantial. Our difficulty, and what makes it impossible for us to decide whether or not petitioner was prejudiced, is that we do not know what the earlier appraisal was.

The situation we have, then, is a parallel to what we faced in *Atlantic Refining Co.* v. *Director of Public Works, supra,* and we have the same reluctance here, as we had there, to order a new trial pending a determination of the contents

134

of the prior appraisal. That appraisal is the key. Accordingly, we direct respondent to supplement the record by filing in the office of this court within 20 days of the filing of this opinion whatever prior appraisal it may have had from the witness Virgadamo. At the same time the respondent should furnish a copy of that appraisal to petitioner. Thereafter the parties may on April 7, 1969, having within one week prior thereto filed briefs, appear before this court and argue their respective positions on the sole issue of whether or not plaintiff was prejudiced by the refusal of the trial justice to allow respondent's expert to be cross-examined concerning his prior appraisal. It will then be possible for us to decide whether or not the case should be remitted for a new trial.

## THE RESPONDENT'S CROSS-APPEAL

On its cross-appeal respondent does not suggest that the trial justice in his review of the evidence either overlooked or misconceived any that was material. Instead it argues that this is a case where the only evidence on damages came from experts who were equally qualified, that it was nearly balanced or was such that different minds could fairly and naturally come to different conclusions thereon, and that in such circumstances the trial justice in disregarding the testimony which the jury accepted was in effect substituting his opinion for theirs.

The respondent's argument misconceives the duty of the trial justice. He was required in the exercise of his independent judgment to consider all of the material evidence in the case in the light of his charge to the jury and to pass on its weight and the credibility of the witnesses. This the trial justice did. He found Virgadamo's appraisal wanting because it was premised on a square-foot-value of property located in a residential zone and did not take into consideration the incremental value which attached because it was a nonconforming commercial use located in a residential

zone. Moreover, he specifically observed that Virgadamo's figure of $600 for 5,017 square feet of land, " * * * in any part of the City of Newport, even in the middle of the dump, is ridiculous." In short, he rejected Virgadamo's testimony because of its self-contradictions and because of its inherent improbabilities. In so doing, he was, of course, well within his province.

The trial justice went further, however, and after having thus disposed of Virgadamo's testimony he considered what Laudati had said. While he rejected Laudati's $10,000 appraisal as "exceptionally high" because of his failure to make sufficient adjustments on the sales used as comparable, he nonetheless accepted his testimony as being generally superior to Virgadamo's.

After the completion of this process of accepting and rejecting the relevant testimony, the trial justice then reexamined the record as if it were purged of the testimony he had found wanting. Then, convinced that the jury's award of damages on such a record was inadequate because it failed to administer substantial justice to the parties and was against the fair preponderance of the evidence, and because it did not respond truly to the merits in the case, he ordered a new trial unless the respondent consented to an additur.

In our judgment he scrupulously observed the duties which were incumbent upon him in passing on a motion for a new trial. *Barbato* v. *Epstein,* 97 R. I. 191, 196 A.2d 836. We find no error.

If following the hearing to be held on April 7, 1969, as herein provided, it shall appear that the petitioner was prejudiced by the evidentiary ruling limiting the petitioner's cross-examination of the respondent's expert, his appeal will be sustained and the case will be remitted to the superior court for a new trial; if, however, it shall then appear that he was not so prejudiced, his appeal will be denied

and dismissed as will the respondent's, and then the case will be remitted to the superior court for a new trial unless the respondent shall within the period to be fixed by that court consent to the additur heretofore awarded by the trial justice.

*Moore, Virgadamo, Boyle & Lynch, Francis J. Boyle,* for petitioner.

*Corcoran, Peckham & Hayes, William W. Corcoran, Vernon A. Harvey,* for respondent.