Kevin DONOVAN et al.

v.

Kathleen C. BOWLING et al.

No. 96–317–M.P.

Supreme Court of Rhode Island.

Feb. 12, 1998.

David Morowitz, Christopher A. Hultquist, Providence, for Plaintiff.

David W. Carroll, William F. White, Providence, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS and GOLDBERG, JJ.

**OPINION**

BOURCIER, Justice.

This case came before us following our granting of the plaintiffs' petition for writ of certiorari filed after a Superior Court trial justice granted the defendants' motion in limine that sought to disqualify Constance Bowe, M.D., a treating physician and expert witness for the plaintiffs.

Kevin and Diane Donovan (plaintiffs) were the parents of Nicole E. Donovan (Nicole), who was born on April 25, 1990, following delivery at Women and Infants Hospital in Providence. Nicole was born with neurological complications. The plaintiffs, believing that Nicole's condition was the proximate result of actions and/or inaction by the hospital and her medical attendants, commenced a medical-negligence malpractice action against Kathleen C. Bowling, M.D., Patrick J. Nugent, M.D., Donald Ramos, M.D., Doctors Murphy, Cahill, and Bowling, Inc., and Women and Infants Hospital of Rhode Island (defendants) on June 21, 1991.

Nicole died on May 5, 1994, while the plaintiffs' action was pending in the Superior Court, and the civil action complaint was amended to permit the plaintiffs to proceed both as individuals and in their capacities as coadministrators of Nicole's estate.

On May 10, 1993, almost two years into the case and as part of the case discovery process, counsel for several of the defendants wrote to Constance Bowe, M.D. (Dr. Bowe), a pediatric neurologist who at the time of Nicole's birth was practicing at Women and Infants Hospital, and informed her that he would like to meet with her to discuss the pending case. Doctor Bowe had been one of Nicole's treating physicians after her birth.[1] Counsel did not at that time speak to or meet with Dr. Bowe to discuss the plaintiffs' action against the defendants, but instead a paralegal from counsel's office later contacted and spoke with Dr. Bowe. On June 8, 1993, the paralegal sent Dr. Bowe, who by that time had relocated to and was practicing in California, a copy of Nicole's medical records.

---

1. The amount of care Dr. Bowe actually provided to Nicole is a matter of some dispute by the parties although it was undisputed that she was one of the treating physicians.

On June 24, 1993, defense counsel, after speaking with Dr. Bowe by telephone, sent Dr. Bowe a copy of the medical records of Diane Donovan, Nicole's mother. Allegedly included with the medical records of Nicole's mother was a chronology of events prepared by defense counsel. That chronology was alleged to be a compilation of facts actually derived from the medical charts and medical records, as well as from the allegations and assertions made by the parties and defense counsel's research of the highlights of the case. After reviewing that information, Dr. Bowe later discussed the materials sent to her with the paralegal for counsel for the defendants. Those discussions involved two one-half hour telephone conversations.

Doctor Bowe, at the request of the paralegal, then sent defense counsel her bill for services on July 8, 1993 in the amount of $1,875. That bill was in payment for Dr. Bowe's review of the medical records and for the two telephone call conferences with the paralegal from defense counsel's office. Defense counsel paid that bill in full. On the bill Dr. Bowe stated that at the request of the paralegal she would retain the medical records for the purpose of future discussions about the case, that could result after the paralegal had discussed the contents of her telephone conversation with defense counsel. Allegedly, during the two telephone conferences invoiced on Dr. Bowe's bill, Dr. Bowe had expressed opinions to the paralegal favoring the defendants' position.

Thirteen months later, defense counsel, on August 3, 1994, informed Dr. Bowe by letter that the trial would begin on January 3, 1995. The letter also informed Dr. Bowe that

"we do not expect to be presenting your testimony until some three to four weeks later or more toward the end of January, beginning of February 1995. We will certainly be in touch with you as the trial dates draws [sic] closer to make arrangements to meet with you to prepare your testimony."

On November 1, 1994, the defendants sent Dr. Bowe another letter informing her that the trial date had been rescheduled to May 1995. Doctor Bowe in affidavit denied ever having received the August 3 or November 1 letters.

On April 17, 1996, counsel for the defendants, in the course of a telephone conversation with counsel for the plaintiffs, learned that plaintiffs' counsel had contacted Dr. Bowe for purposes of having her testify for the plaintiffs at the coming trial. Defense counsel then informed plaintiffs' counsel that he had previously engaged Dr. Bowe as an expert and that he planned to present her as a defense witness at trial. After the telephone conversation, defendants' counsel sent a letter to plaintiffs' counsel stating therein that following their earlier telephone conversation he had called Dr. Bowe and had asked her about her prior contacts with plaintiffs' counsel. Defense counsel informed plaintiffs' counsel in that letter that Dr. Bowe had stated that she recalled reviewing the case for defense counsel and that she had been compensated by defense counsel for her case review. She also stated according to defense counsel that she had informed plaintiffs' counsel that she had been retained by defense counsel but that plaintiffs' counsel assured her that she could still talk to him. In that same letter defendants' counsel expressed his objection to plaintiffs' counsel's actions in dealing with Dr. Bowe after he had been informed by the doctor that she had reviewed the case records for defense counsel.

Defense counsel then filed a motion in limine, seeking to exclude Dr. Bowe's expert testimony, alleging that, prior to the time that plaintiffs' counsel contacted Dr. Bowe, she had already entered into a confidential relationship with defense counsel for several of the defendants. Dr. Bowe submitted an affidavit to the Superior Court that indicated, contrary to defense counsel's contention, that she never realized that she had been retained by defense counsel. According to her affidavit, she never received defense counsel's purported August 3, 1994 letter and had not been contacted by defense counsel in any other manner for over two years from the date of her initial medical-record-review telephone conferences with defense counsel's paralegal. Furthermore, Dr. Bowe could not recall any confidential information ever having been exchanged in her conversations with

the paralegal. She stated that she had "no memory of having received any information other than what was contained in the medical records."

The trial justice granted defense counsel's motion in limine request to disqualify the doctor stating that she felt a confidential relationship could be inferred between Dr. Bowe and defense counsel.

In a brief bench decision the trial justice concluded:

"And assuming for the sake of argument, that all of the doctor's intentions relative to defense counsel and then subsequently relative to plaintiffs' counsel were well intentioned, the fact remains that she has compromised herself. She has compromised her integrity to testify as an expert, and to get into all that has transpired between and among counsel, and the doctor would serve neither the Donovans nor the defendants were that to play out in front of the jury. She's disqualified as an expert."

The plaintiffs then filed their petition for certiorari with this Court. We granted the writ and stayed the trial proceedings in the Superior Court until our further order.

We conclude pursuant to our explicit holding in *Lewis v. Roderick*, 617 A.2d 119 (R.I. 1992), that the trial justice erred in granting the defendants' motion in limine. In *Lewis* we concluded that defense counsel in a medical malpractice action was permitted to engage in ex parte communications with the plaintiff's treating physician, notwithstanding that the treating physician had been previously retained by the plaintiff to testify as her expert. While acknowledging the existence of a patient-physician privilege as found in the Health Care Information Act and codified in G.L.1956 chapter 37.3 of title 5, we pointed out that the statute provided an exception to the protections provided by the patient-physician privilege when the "patient brings a medical liability action against

a health care provider." 617 A.2d at 121 (quoting § 5–37.3–4(b)(8)). Therefore, we concluded that because the plaintiff had instituted a medical malpractice action against the health-care provider, including her treating physician, she was no longer entitled to the benefits of the patient-physician privilege. Further, since there is no Superior Court rule that prohibits ex parte interviews by counsel with prospective trial witnesses or purports to restrict or "to delineate the only methods of pretrial discovery by which information pertinent to the litigation may be obtained," 617 A.2d at 122, a treating physician's first-hand observations are freely discoverable by both sides to a medical-malpractice action and the defendant's counsel in *Lewis* was permitted to meet with and speak with the treating physician retained by the plaintiff without the necessity of having the plaintiff or plaintiff's counsel present. *Id.*

In the case now before us we are not confronted with a defendant's counsel who wants to interview a potential expert witness for the plaintiff, thereby potentially invoking the patient-physician privilege. We are instead faced with a plaintiff's counsel who seeks to retain as an expert a treating doctor who had been purportedly previously retained by the defendants as an expert witness but who was nonetheless a doctor who had served as a treating physician. No patient-physician privilege is implicated in that situation because the plaintiffs are the ones who are now seeking to have the treating physician testify on their behalf and the patient-physician privilege exists only between the patients, Nicole and Diane, and the treating physician. Therefore, the primary concern that we had voiced in *Lewis*, which was whether the patient-physician privilege barred the defendant from speaking ex parte with the treating physician, is not a concern here. Thus, pursuant to our decision in *Lewis*, there is nothing that bars the plaintiffs from calling Dr. Bowe as their own witness during the case trial.[2]

2. We note also Dr. Bowe's affidavit submitted to the Superior Court. In that affidavit she states that she at no time considered herself as having been retained by defense counsel for the purpose of testifying at trial for the defendants. She states that she was asked by the defendants' law firm, in May 1993 to review the medical records of Nicole Donovan as a "treating physician," and that she assumed that her review of those records was done as the "treating physician." Doctor Bowe further stated in her affidavit that "no communications were ever received by me, and

The defendants' reliance on *Cordy v. Sherwin–Williams Co.*, 156 F.R.D. 575 (D.N.J. 1994), and *Wang Laboratories, Inc. v. Toshiba Corp.*, 762 F.Supp. 1246 (E.D.Va.1991), is misplaced. Neither of those cases involved a treating physician, as did *Lewis* and this case. We have previously recognized that "the opinionative evidence of an expert * * * is oftentimes protected from pretrial disclosure under deposition—discovery procedures." *Cooper v. Housing Authority of Newport*, 105 R.I. 126, 132, 249 A.2d 904, 907 (1969). However, in *Cooper* we went on to say that "[t]he cases extending such protection are to be distinguished from those where what is sought is disclosure of the facts observed by a witness to an occurrence, for in litigation involving that kind of subject matter the superior court rules of civil procedure contemplate that a litigant shall be able to secure the help of his adversary in developing his own side of the case." *Id.* at 132–33, 249 A.2d at 907. The testimony of a treating physician is unlike the testimony of an expert retained solely for the purpose of litigation. An expert retained for litigation could in certain circumstances be considered part of the litigation team since the expert is oftentimes responsible for developing a party's theory of the case.

However, that is not what is before us in this case. The testimony of a treating physician is entirely different from that of an expert retained solely for litigation purposes because a treating physician is like an eyewitness to an event and will be testifying primarily about the situation he or she actually encountered and observed while treating the patient.[3] That testimony is premised on the circumstances actually observed by the physician and not on some theory of the case developed by the litigation expert or espoused by one of the litigants or counsel. First-hand and on-scene observations by a witness, expert or not, should be always and equally accessible to both parties. To allow one party to contact a treating physician and then claim that the treating physician has been retained as a possible expert witness, thereby effectively barring the other party from access to that physician's unique first-hand perspective, would be highly unfair to litigants, regardless of whether the party sits at the plaintiff's or the defendant's counsel table, and should not be sanctioned by this Court.[4]

The trial justice's apparent fear that should Dr. Bowe testify for the plaintiffs, any contradictory statements she may have made to defense counsel's paralegal should not be played out in front of the jury, simply overlooks common practice during cross-examination when prior inconsistent statements made by any witness are properly admissible for impeachment purposes. There is certainly nothing novel in the impeachment of a plaintiff's treating-physician's testimony by use of prior inconsistent statements made to others by that physician. There likewise would be nothing novel in the defendants' calling of the

---

no discussions ever took place to indicate that my services were considered 'retained' by the defense attorney." She denied that in both telephone conversations with defense counsel's paralegal she had ever discussed legal strategies and had "no memory of receiving any information" from defense counsel "other than what was contained in the medical records" of Nicole and Diane.

3. In *Irvine v. Inn at Castle Hill, Inc.*, 670 A.2d 1263, 1263 (R.I.1996), we said that

"[w]itnesses in our state courts do not become the exclusive property of whatever litigant first contacts and interviews them. The search for facts and truth in pretrial discovery proceedings cannot be monopolized by landing first on a witness and planting the flag of discovery and dominion on his or her head."

4. In *Town of North Kingstown v. Ashley*, 118 R.I. 505, 374 A.2d 1033 (1977), this Court cited with approval *Sanford Construction Co. v. Kaiser Aluminum and Chemical Sales, Inc.*, 45 F.R.D. 465 (E.D.Ky.1968), wherein in that court, quoting from the Stanford Law Review, noted:

" 'Unlike the attorney's impressions or those of the client or his investigators as to the value of certain evidence or the veracity of a potential witness, the opinions and conclusions of an expert constitute evidence in themselves, and may be the only way in which to establish facts material to the case. Indeed, the report of an expert to the attorney is sought for the purpose of obtaining such facts and it can hardly be said that once in the hands of the attorney the information becomes "protected conclusions" anymore than does an eye-witness account by any other witness.' " *Ashley*, 118 R.I. at 511, 374 A.2d at 1037.

paralegal to testify in regard to any alleged prior inconsistent statements made to her by Dr. Bowe. *See Morgan v. Washington Trust Co.,* 105 R.I. 13, 249 A.2d 48 (1969).[5]

Accordingly, for all the foregoing reasons, the petition for certiorari is granted, and the decision of the trial justice is quashed. The papers in this case are remanded to the Superior Court for further proceedings in accordance with this opinion.

**5.** However, we note that "Rhode Island law is clear that no witness, expert or otherwise, may testify that another witness is lying * * *." *State v. Tavares,* 590 A.2d 867, 870 (R.I.1991).