James LEE et al.

v.

Alcide MORIN et al.

James LEE et al.

v.

FANNING & DOORLEY
CONSTRUCTION CO.

No. 81–99–Appeal.

Supreme Court of Rhode Island.

Dec. 13, 1983.

John W. Kershaw, Rice, Dolan, Kiernan & Kershaw, Hugh L. Moore, Jr., Guy J. Wells, Gunning, LaFazia & Gyns Inc., William J. McGair, Providence for defendant.

James L. O'Neill, Providence, Leo J. Dailey, Nolan & Dailey, Coventry, for Alcide Morin.

## OPINION

KELLEHER, Justice.

The plaintiffs, James Lee and his spouse, Norma, (the Lees), bought a house built by the defendant Alcide Morin (Morin) in Scituate, Rhode Island. Soon after the Lees moved into their new home, the city of Providence (Providence) through its Water Supply Board, seeking to convey water from the Scituate Reservoir to the city, acquired the lot adjacent to the Lees' house and constructed an aqueduct on that lot. The defendant Maguire Associates, Inc. (Maguire), designed the aqueduct, and the defendant Fanning & Doorley Construction Company (Fanning & Doorley) built it.

The Lees moved into their house in June of 1966. They lived there free of trouble until October of 1972 when their children calmly reported, "There's water in the cellar." From this moment until February of 1973, the Lees did constant battle with the water in their basement.

Two sump pumps operating twenty-four hours a day, plus visits from the fire department, could not stem the tide. When the water finally receded, it left substantial property damage for which the Lees seek redress.

At the Superior Court trial, the Lees attempted to prove the negligence of defendants through expert testimony. An engineer, Harry DiZoglio (DiZoglio), testified that severe structural deficiencies existed in the foundation of the house and that these were caused in part by the instability of the soil upon which the house was built.

The Lees also called Joseph Biernacki (Biernacki), a general contractor, to discuss the issue of damages. However, when the Lees' counsel began to lead him into a discussion of the aqueduct, the trial court terminated the inquiry on this point.

The trial justice granted defendants' motions for directed verdicts. Morin's motion was based on the contention that the Lees' claim was barred by the applicable statute of limitations, G.L.1956 (1969 Reenactment) § 9–1–13. Providence, Maguire, and Fanning & Doorley asserted that the Lees failed to prove causation in negligence. The Lees are before us claiming that the trial justice erred in granting any motions for directed verdict.

The issue raised by the grant of Morin's motion is this: When does our statute of limitations begin to run in a case involving improvement to real property; that is, does it start to run from the date the improvement is completed or from the moment the injury is discovered?

The applicable Rhode Island statute for this question is the former § 9–1–13. This statute provides:

"*Limitation of actions generally.*—Except as otherwise specially provided, all civil actions shall be commenced within six (6) years next after the cause of action shall accrue, and not after." [1]

Morin argued, and the trial court agreed, that this statute began to run from the time the house was sold. We reverse.

In answering this question, we are again faced with the policy considerations discussed in *Wilkinson v. Harrington,* 104 R.I. 224, 243 A.2d 745 (1968). We noted in *Harrington* that the fundamental concept of statutes of limitations is crucial to the orderly administration of justice.

"It is eminently clear that statutes of limitations were intended to prevent the unexpected enforcement of stale claims concerning which persons interested have been thrown off their guard for want of seasonable prosecution." *Id.* at 236, 243 A.2d at 752.

But the policy cannot be easily applied in situations in which the prospective plaintiff can have no knowledge of a possible legal

1. This statute has since been amended, extending the statutory period from six years to ten.

General Laws 1956 (1969 Reenactment) § 9–1–13, as amended by P.L.1978, ch. 299, § 2.

action until an ostensible wrong occurs. Yet this wrong may occur outside the statutory period. In *Harrington* we held that it would be "palpably unjust" to "require a man to seek a remedy before he knows of his rights * * *." *Id.* at 238, 243 A.2d at 753.

The statute discussed in *Harrington* was § 9–1–14, which provided: "[A]ll civil actions at law for personal injuries shall be ' * * * within two (2) years next after the cause of action shall accrue and not after.' " *Id.* at 228, 243 A.2d at 748.

In defining the word "accrue," we noted that three possible interpretations existed. Strict construction would find the statute running from the time the negligent action occurred. A more liberal interpretation would define "accrue" as the time the injury first became apparent. Finally, a third possibility suggests that the statute would start running when the plaintiff discovered the injury or, through the exercise of reasonable diligence, should have discovered it. *Id.* at 231, 243 A.2d at 749–50.

This final option is commonly referred to as the "discovery rule," which hitherto was and has been restricted in application to claims involving medical malpractice. For obvious reasons, such a rule would have little applicability to the issue here. Reasonable diligence may require thorough inspection. No reasonable man should be expected to inspect a house thoroughly, by expensive engineering services, in order to detect sophisticated structural deficiencies.

█ Therefore, we hold that with respect to improvements to real property, § 9–1–13 begins to run when the evidence of injury to property, resulting from the negligent

act upon which the action is based, is sufficiently significant to alert the injured party to the possibility of a defect.[2]

Morin argues that this approach will fly in the face of established equitable principles governing statute-of-limitations questions. The claim is that such a rule will make defenses to the action difficult because of a loss of both evidence and witnesses.

The truth of this argument is also detrimental to the plaintiff's position. It should be remembered that it is the plaintiff who must sustain the burden of proof. A loss or destruction of evidence, or the dimming of a witness's memory, will only make upholding the burden that much more difficult.

Furthermore, we have consistently held that in situations in which a reasonable person would not have discovered the legal action prior to the time of injury, the statute begins to run at the time the injury manifests itself.[3]

In *Romano v. Westinghouse Electric Co.,* 114 R.I. 451, 336 A.2d 555 (1975), the plaintiff sued the defendant for injuries and damage sustained after the explosion of a television set made by the defendant manufacturer. The set was purchased more than six years prior to the explosion. Again, we had to determine when a cause under § 9–1–13 "accrued." *Id.* at 458, 336 A.2d at 559.

We held that since in an action on the case for negligence to recover damages for personal injuries proof of actual damages is required, the statute of limitations would begin to run at the time of injury. *Id.* 114 R.I. at 458–59, 336 A.2d at 559.

**2.** This holding substantially agrees with the Wisconsin Rule as stated in *Tallmadge v. Skyline Construction, Inc.,* 86 Wis.2d 356, 272 N.W.2d 404 (1978). In *Tallmadge,* the Wisconsin Supreme Court held that the plaintiffs had the requisite notice from the time cracks were seen in the walls of their building. *Id.* at 361, 272 N.W.2d at 406. For an exhaustive discussion of case law on the question of statutes of limitations and defects in houses, *see* annot. 12 A.L.R. 4th 866 (1982).

**3.** The defendant relies on a contract theory under *Padula v. J.J. Deb-Cin Homes, Inc.,* 111 R.I. 29, 298 A.2d 529 (1973), in arguing that in cases involving an implied warranty of habitability, the date of possession sets the statute running. However, this case is clearly one in negligence, and that claim is therefore inapposite.

The rationale for this line of cases is that a person have a reasonable opportunity to become cognizant of an injury. For example, in *Fuscellaro v. Industrial National Corp.,* 117 R.I. 558, 563, 368 A.2d 1227, 1231 (1977), we determined that under the law of conversion, a property owner knows "what and where their assets are." And furthermore, the law of negotiable instruments requires a finality of transaction. *Id.* Therefore, we held that a cause of action for conversion accrued at the time of conversion. *Id.*

*Fuscellaro* is easily distinguished from the facts here. Obviously, it would be much easier for a person to discover a wrongfully converted negotiable instrument, payable to him, than it would for the owner of a house to discover defects before they became evident.

■ Since the Lees, like their counterparts in *Romano* and *Harrington,* were not "sleeping" on their rights and since they acted reasonably in relying on the implied warranty of habitability of the house (*Padula v. J.J. Deb-Cin Homes, Inc.,* 111 R.I. 29, 298 A.2d 529 (1973)), we believe that the trial justice erred in directing a verdict in favor of Morin.[4]

Before we address the issue of a directed verdict as it relates to the construction of the aqueduct, we must first consider whether the trial justice abused his discretion in limiting the testimony of one of plaintiffs' expert witnesses.

In order to succeed against Providence, Maguire, and Fanning & Doorley, the Lees would have had to prove that Providence and Maguire were negligent in the design of the acqueduct and that Fanning & Doorley erred in its construction. Providence's liability is through the theory of vicarious liability. The Lees would also have to prove that this negligence was the proximate cause of the injury. *Salk v. Alpine*

*Ski Shop, Inc.,* 115 R.I. 309, 342 A.2d 622 (1975).

The Lees attempted to sustain their burden through the testimony of two expert witnesses. The first witness, DiZoglio, a civil engineer, testified that the damage was largely due to inadequate soil foundation. However, his opinion did not generate the requisite causal relationship with the acts of the aqueduct defendants.

Thereafter, the Lees called Biernacki, a general contractor, who first testified with respect to the question of damages to the house and the cost of their repair. This witness required a recess to compute damages with reference to 1972 data. When he resumed the stand, however, the Lees attempted to lead this witness into a discussion of the part the aqueduct played in contributing to the Lees' misfortunes. The trial justice refused to allow this inquiry.

It is well settled in Rhode Island that "[w]hether a witness is qualified to express an expert opinion is a matter which is addressed to the sound discretion of the trial justice, and the exercise of such discretion will not be disturbed by this court on appeal absent a showing of abuse." *Schenck v. Roger Williams General Hospital,* 119 R.I. 510, 520, 382 A.2d 514, 519 (1977).

■ However, this principle, while deferential to the decision of the trial justice, does not necessarily foreclose further appellate inquiry. This court must determine whether "the discretion has been soundly and judicially exercised, that is, if it has been exercised * * * in the light of reason applied to all the facts and with a view to the rights of all parties to the action and not arbitrarily or willfully, but with just regard to what is right and equitable under the circumstances and the law." *Atlantic Refining Co. v. Director of Public Works,* 102 R.I. 696, 233 A.2d 423, *reh'g denied,* 102 R.I. 765, 233 A.2d 423 (1967).

See, e.g., *Malesev v. Wayne County Road Commissioners,* 51 Mich.App. 511, 215 N.W.2d 598 (1974); *Rosenthal v. Kurtz,* 62 Wis.2d 1, 213 N.W.2d 741 *reh. denied,* 62 Wis.2d 1, 216 N.W.2d 252 (1974).

---

4. This theory is not so novel as defendants would have this court believe. In the annotation mentioned in footnote 2, cases are cited from throughout the country which have expanded the rule to the construction context.

With this standard in mind, we now consider the propriety of the trial court's actions. As noted earlier, Biernacki is a general contractor who, at the time of trial, had nearly twenty years of experience constructing numerous private dwellings and commercial buildings. In preparing for his testimony, Biernacki visited the Lees' home on several occasions and was intimately familiar with the existing problems. He testified that he saw many structural problems due in part to "improper construction techniques."

■ Although Biernacki was not a structural or civil engineer, this fact alone is not *per se* a reason to deny his testimony. This particular lack of expertise affects only the weight given his testimony, not his competency to testify. *Leahey v. State,* 121 R.I. 200, 397 A.2d 509 (1979); *State v. Cochrane,* 114 R.I. 710, 339 A.2d 256 (1975).

In an offer of proof, the Lees' counsel informed the trial justice that Biernacki would have testified that, based upon his education and experience, he was of the opinion that the aqueduct was improperly built. Nevertheless, the trial justice rejected the offer without giving any reason.

In *Spino v. Anderson,* R.I., 419 A.2d 271 (1980), we upheld the decision of the trial court in excluding a witness who was called to testify with respect to the cure of defects in an improperly constructed building. However, in *Spino,* as opposed to the situation here, the trial justice made particular note that the witness's duties "did not establish his expertise on the type of damage alleged in the present case." *Id.,* 419 A.2d at 274.

The trial justice's cursory rejection of Biernacki's qualifications makes it impossible for us to give the usual deference which this court gives to the discretionary actions taken by a trial justice. We are of the opinion that Biernacki should have been permitted to give the jury his opinion as to why the damages suffered by the Lees were due to the respective negligent acts of the engineering and construction firms hired by Providence.

The plaintiffs' appeal is sustained, the judgment appealed from is vacated, and the case is remanded to the Superior Court for a new trial.