**ELECTRIC TERMINAL CORP.**

**v.**

**CESSNA AIRCRAFT**

**v.**

**TELEDYNE INDUSTRIES, INC.**

**No. 84–290–Appeal.**

Supreme Court of Rhode Island.

Jan. 29, 1987.

Gerald J. Petros, Hinckley Allen Tobin & Silverstein, Michael G. Sarli, Providence, for plaintiff.

Vincent T. Cannon, Guy T. Wells, Gunning LaFazia & Gnys, Inc. Providence, Thomas Chester, Pawtucket, for defendants.

## OPINION

KELLEHER, Justice.

This is a products-liability action in which the defendants, Cessna Aircraft Company (Cessna) and Teledyne Industries, Inc. (Teledyne), were granted a directed verdict following the presentation of evidence by the plaintiff, Electric Terminal Corporation (Electric Terminal). Electric Terminal appeals.

Electric Terminal constructs electrical connectors for manufacturers of such products as computers, automobiles and appliances. One of the firm's three plants is located in Warwick, Rhode Island. For nearly eighteen years the company has owned its own airplane. The plane is used to visit customers and other, company-owned plants in distant locations.

In 1977, Electric Terminal purchased a Cessna airplane, model No. T337, containing two Teledyne engines numbered TS10–360–C. At the time of purchase, the aircraft was at least four years old and had been operated for approximately 400 hours by at least one previous owner. According to Electric Terminal, problems with the plane arose immediately, including the cracking of crank cases, and the blowing-apart of cylinders and the breaking-up of alternators while in flight, causing emergency landings and periods of inoperability. Eventually, new engines and alternators had to be installed, at great cost to Electric Terminal.

In 1980 Electric Terminal filed separate complaints against Teledyne and Cessna in Providence County Superior Court. Each complaint alleged four counts; negligence, strict liability, breach of express warranty, and breach of implied warranty.[1] In 1982, upon motion by Electric Terminal, the actions were consolidated. The trial commenced in March of 1984. At the completion of Electric Terminal's case in chief, Teledyne and Cessna moved for a directed verdict. The trial justice granted the mo-

tion and entered judgment for Teledyne and Cessna on March 9, 1984.

■ The first ground for appeal concerns the refusal of the trial justice to permit Casman Thomas to testify as an expert witness for Electric Terminal. Mr. Thomas was editor in chief of a monthly publication called Light Plane Maintenance, as well as associate editor of Aviation Consumer. At trial he described his duties as investigative reporting and technical writing. The articles concerned the maintenance of small planes and other "timely" issues. He held a private pilot's license with single-engine airplane and multi-engine airplane and rotor craft ratings. He was a member of the Experimental Aircraft Association and the Aircraft Owners and Pilots Association. He testified that he had authored an article for the March 15, 1984 issue of Aviation Consumer comparing the P337 series aircraft, the one at issue, with three competitors, and that he had penned two published works, one on rotorcraft, another on aircraft maintenance. Finally, Mr. Thomas stated that he had been present during the presentation of all of Electric Terminal's witnesses, and that he had reviewed all pertinent documents.

After completing that portion of his testimony relative to his qualifications, Mr. Thomas was asked the following question:

"Based upon your knowledge in this field, your experience, your background, your investigation generally into the Skymaster, your investigation generally into the TSI0360 engine and your review of all the documents that we have looked at today that you've testified about and the testimony of the three witnesses that you heard today, do you have an opinion as to whether or not the 337 Skymaster, 5 Charlie Mike, which Mr. Dunn owned was fit for the ordinary purpose of flying?"

Counsel for both Teledyne and Cessna objected, and the trial justice sustained the objections not only as to form, but also as

---

1. Electric Terminal did not pursue its count of strict liability and negligence at trial.

to competence, finding the witness unqualified as neither "an engineer nor a lawyer," and finding his background as a writer insufficient to "qualify him to give expert opinion [*sic*] on an engineering subject." Counsel for Electric Terminal made an offer of proof, informing the trial justice that Mr. Thomas would have testified that the Cessna aircraft was not fit for the ordinary purpose of flying as defined by the industry and trade, compared to other, similar airplanes.

We have repeatedly stressed that the determination of whether a witness is qualified to testify as an expert lies within the sound discretion of the trial judge, which will not be disturbed on review unless there is an abuse of discretion. *State v. Lee*, 502 A.2d 332, 335 (R.I.1985); *State v. Wheeler*, 496 A.2d 1382, 1388 (R.I.1985); *Schenck v. Roger Williams General Hospital*, 119 R.I. 510, 520, 382 A.2d 514, 519 (1977). While this principle displays great deference to the trial judge, we nonetheless shall look closely to "determine whether 'the discretion has been soundly and judicially exercised * * * with just regard to what is right and equitable under the circumstances and the law.'" *Lee v. Morin*, 469 A.2d 358, 361 (R.I.1983) (quoting *Atlantic Refining Co. v. Director of Public Works*, 102 R.I. 696, 233 A.2d 423, *reh'g denied*, 102 R.I. 765, 233 A.2d 423 (1967)).

In *Morin* we sustained an appeal by a plaintiff when the trial justice rejected the proffered expert testimony of a witness without stating any reasons for doing so. *Morin*, 469 A.2d at 362. We stated then that such a cursory rejection of qualifications "makes it impossible for us to give the usual deference which this court gives to the discretionary actions taken by a trial justice." *Id.* In the present case, however, the trial justice pointed out that he was refusing to allow the witness to testify as an expert because his background in writing about aviation was inadequate to establish the expertise in aviation engineering necessary to render a valid opinion. A review of the record reveals that the witness never testified to any qualifications as

an aircraft mechanic or engineer, nor did he testify to personal experience with the airplane or the engines at issue. This type of careful weighing of a potential expert witness's qualifications by the trial justice is precisely what Rhode Island case law seeks to encourage. As such, we see no reason to reverse the ruling of the trial justice for abuse of discretion.

The second ground for appeal that we shall address concerns the trial justice's granting of defendant's motion for directed verdict. On an appeal from such a decision on a motion for a directed verdict, we must look carefully at the evidence in a light most favorable to the adverse party. We give such party the benefit of all legitimate inferences that may be properly drawn therefrom without sifting or weighing evidence or exercising independent judgment on the credibility of witnesses. If issues upon which reasonable persons might draw different conclusions exist, we must overturn the trial justice's decision. *Thomas v. Amway Corp.*, 488 A.2d 716, 718 (R.I. 1985); *Gormley v. Vartian*, 121 R.I. 770, 780, 403 A.2d 256, 261 (1979).

■ In ruling on the motion for a directed verdict, the trial justice alluded to a number of reasons for directing a verdict for the plaintiff. We need discuss but one.

The five elements of an action for breach of implied warranty of merchantability are "(1) that a merchant sold goods, (2) which were not 'merchantable' at the time of sale, and (3) injury and damages to the plaintiff or his property (4) caused proximately and in fact by the defective nature of the goods, and (5) notice to seller of injury." White and Summers, *Uniform Commercial Code*, § 9–6 at 343 (2d ed. 1980). As to the fourth element, we have been careful to require that plaintiff prove more than "the happening of an occurrence," instead requiring a showing of "the causal nexus between the happening of the occurrence and the alleged breach of the implied warranty of merchantability." *Thomas v. Amway Corp.*, 488 A.2d at 719.

Here, the lack of expert testimony on the question of the fitness of the aircraft or its engines at the time of sale by the defendants is certainly in and of itself fatal. Without such testimony, no reasonable juror could conclude that a breach of the implied warranty had taken place. Little evidence of the aircraft's chain of distribution, nor its maintenance history, was offered. As such, one could only engage in conjecture to conclude that the aircraft and the engines, when sold, were in some way in breach of any implied warranty of merchantability, and that it was not simply a matter of inferior upkeep or repair that caused the problems. The necessary causal link, therefore, is missing.

This critical omission completely overshadows all other claims of error lodged against the trial justice by Electric Terminal. The failure to provide competent evidence of proof of unmerchantability and causation renders a fatal blow to the claims now lodged against the defendants.

For the reasons set forth above, the plaintiff's appeal is denied and dismissed and the judgment appealed from is affirmed.

WEISBERGER, J., did not participate.