**EAST SIDE PRESCRIPTION
CENTER, INC., et al.**

v.

**E.P. FOURNIER, CO., INC.**

No. 89-440-A.

Supreme Court of Rhode Island.

Jan. 25, 1991.

Lauren E. Jones, Jones Associates, Frederick G. Cass, Providence, for plaintiffs.

Ernest J. Pratt, Blais, Cunningham & Crowe Chester, Pawtucket, James A. Ruggieri, Higgins, Cavanagh & Cooney, Providence, for defendant.

## OPINION

FAY, Chief Justice.

This matter is before the Supreme Court on appeal by the plaintiffs from a Superior Court judgment in favor of the defendant, E. P. Fournier, Inc. (Fournier); dismissing the plaintiffs' complaint for damages. The plaintiffs, East Side Prescription Center, Inc., and its owner Richard Backer (Backer), appeal the decision, alleging that the trial justice erred in directing a verdict against the plaintiffs on counts 1, 2, and 4 of the plaintiffs' complaint. We are of the opinion that the trial justice did err, and therefore, we reverse the judgment of the Superior Court concerning counts 1, 2, and 4.

On July 16, 1981, Backer, as president and owner of East Side Prescription Center, Inc., purchased a 1981 Renault 18i station wagon from Fournier for $12,459.83. Backer intended to use the vehicle to deliver prescriptions, as well as for general transportation. Backer experienced problems with the car from the time he was supposed to take possession in July 1981 to the time he finally revoked his acceptance of the vehicle in December 1983. Backer initially refused to accept the vehicle because of dents on the hood and door. Fournier repaired the dents at no cost to Backer, and Backer then accepted the car. During the next twenty-seven months the car was returned to the dealership numerous times for repairs for a variety of reasons, some of which are set forth below.

In August 1981 the chrome moldings had to be refastened after a routine trip through a car wash caused them to come loose. When the mileage on the car reached the 1,000 mile mark, Backer returned to the car dealership, dropped the car off for its scheduled checkup, and informed Fournier of the various infirmities afflicting the vehicle. At that time the front end of the car was suffering from a "loud vibrating shimmying" when it traveled at fifty-five miles-per-hour, the brakes were squealing, the car was difficult to start, it was stalling intermittently, and loud sounds were emanating from the rear of the automobile. To stop the vibrating, Fournier had to replace the front axle assembly of the car. When this failed to correct the problem, a second set of axles was installed by Fournier. Prior to this time Backer had informed Fournier of several other problems he had discovered that he wished Fournier to repair. There were defects in the paint and rust on the body, and neither the heater nor the defogger was functioning properly.

Following the 1,000 mile checkup, Backer's difficulties with his Renault continued. The air-conditioning unit was malfunctioning, and numerous electrical problems existed, which Fournier failed to remedy. Fournier was able to correct a brake failure by replacing the master cylinder, but despite many efforts to eliminate the car's starting problem, the vehicle continued to start only sporadically. In 1982 the transmission malfunctioned, causing the gears to "slip" and therefore shift "serendipitously." Fournier's attempts to repair the transmission were unsuccessful. In September 1983 the transmission problem progressed and on one occasion caused the

vehicle to break down, necessitating an overhaul and rebuilding of the engine.

After the engine was rebuilt, Backer continued to experience problems starting the car. Backer brought the car back to Fournier once more for repairs to the starter in November 1983. When Backer attempted to retrieve his vehicle after this set of repairs, the car failed to start. At this time Backer left the Renault at the dealership and notified Fournier of his revocation of his acceptance of the vehicle.

In the period from his initial acceptance of the vehicle in 1981 to his subsequent revocation in 1983, Backer returned the car to Fournier at least fifteen times for various repairs. Although the manufacturer's limited warranty had expired when the brakes and transmission required substantial repairs, Fournier assumed the expenses because the problems pre-existed the running of the limited-warranty period.

On May 19, 1984, plaintiffs filed a four-count complaint against Fournier in Superior Court, seeking damages based on plaintiffs' revocation of acceptance and Fournier's breach of implied and express warranties. In addition plaintiffs sought relief under the Magnuson–Moss Warranty Act, 15 U.S.C.A. § 2310(d)(1) (West 1982), which enables "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief * * *." This provision of the act went into effect on July 4, 1975, and applies to consumer goods manufactured subsequent to that date. A third-party complaint was filed by Fournier against American Motor Sales Corp. (AMSC), alleging that AMSC should assume responsibility for any damages awarded to plaintiffs. The matter was reached for trial before a jury in Superior Court in April 1989. When plaintiffs rested their case after eight days of testimony, defendant Fournier moved for a directed verdict on all counts. The trial justice ruled in favor of defendants and granted the directed verdict regarding each of the four counts. The trial justice then granted AMSC's motion for directed verdict on the third-party complaint.

▮▮▮▮ The standard a trial justice must adhere to in granting a motion for directed verdict is well established.

"When directing a verdict, a trial justice 'must consider the evidence in the light most favorable to the party against whom the motion is made without weighing the evidence or considering the credibility of the witnesses and extract from that record only those reasonable inferences that support the position of the party opposing the motion * * *.'" *Coffey v. American Cancer Society*, 540 A.2d 643, 645 (R.I.1988) (citing *AAA Pool Service & Supply, Inc. v. Aetna Casualty and Surety Co.*, 479 A.2d 112, 115 (R.I.1984) quoting *Evans v. Liguori*, 118 R.I. 389, 394, 374 A.2d 774, 776 (1977)).

A directed verdict is granted as a matter of law, not of fact. *Coffey*, 540 A.2d at 645. This court has held that when issues upon which reasonable people might draw conflicting conclusions are presented, a directed verdict should not be granted and the matter should be resolved by a jury. *Montouri v. Narragansett Electric Co.*, 418 A.2d 5, 9 (R.I.1980); *Bergenstock v. LeMay's G.M.C., Inc.*, 118 R.I. 75, 85, 372 A.2d 69, 74 (1977). It is the opinion of this court that the issues presented in count 1 of this matter were not properly decided by the trial justice as a matter of law. Count 1 of plaintiffs' complaint concerns Backer's revocation of his acceptance of the vehicle. To revoke acceptance of the Renault, Backer had to produce evidence to the effect that the automobile did not conform to what he had agreed to purchase and that the nonconformity altered the value of the vehicle to Backer's detriment. According to G.L.1956 (1985 Reenactment) § 6A–2–608, a buyer may revoke his acceptance of a

"(1) * * * commercial unit whose nonconformity substantially impairs its value to him if he has accepted it

(a) On the reasonable assumption that its non-conformity would be cured and it has not been seasonably cured; or

(b) Without discovery of such non-conformity if his acceptance was reasonably induced either by the difficulty of dis-

covery before acceptance or by the seller's assurances.

(2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it."

The trial justice examined the evidence and testimony presented by Backer and determined that Backer did not meet his burden in accordance with § 6A–2–608 in that he failed to present an expert witness who would testify before the jury to his or her belief, based on the evidence, that the vehicle did not conform to what was promised by Fournier. The trial justice found that "the non-conformity, while impairing the value to Mr. Backer to some extent, does not rise to the level of substantial impairment," and that, therefore, Backer's own testimony was insufficient. We disagree with the trial justice's assessment and conclude that Backer introduced sufficient evidence to enable a jury to determine whether the nonconformity substantially impaired the value of the car; therefore, expert testimony was not required.

In *Bergenstock v. LeMay's G.M.C., Inc.*, 118 R.I. at 82, 372 A.2d at 72, this court recognized that issues such as this are for the jury to decide. "[W]hether a particular nonconformity substantially impairs the value of a contract to the buyer is a factual consideration and thus is properly left for the jury." *Id.* The market value of the goods purchased does not necessarily determine the detrimental effect the impairment of the goods has on the buyer.

In similar circumstances courts of other jurisdictions have refused to grant directed verdicts and have not required expert testimony when the plaintiff is able to substantiate an extensive series of defects and problems with the commercial unit purchased. *Durfee v. Rod Baxter Imports, Inc.*, 262 N.W.2d 349, 354 (Minn.1977); *Welch v. Fitzgerald–Hicks Dodge, Inc.*, 121 N.H. 358, 364, 430 A.2d 144, 148–49 (1981); *Asciolla v. Manter Oldsmobile–Pontiac,*

*Inc.*, 117 N.H. 85, 89, 370 A.2d 270, 274 (1977). "When the number of problems with the vehicle becomes so large as to call into question the integrity of the automobile, the value of the vehicle to the buyer may be substantially impaired and the buyer justified in revoking his acceptance even though some of the problems have been repaired or are repairable." *Welch*, 121 N.H. at 364, 430 A.2d at 149. The record reflects Backer's perpetual problems with the car and Fournier's repeatedly unsuccessful attempts at repairing the vehicle. He was not able to utilize the vehicle for the purpose for which it was purchased because of the incessant mechanical malfunctions. It is apparent that the value of the car to Backer, the purchaser in this instance, was substantially impaired. We are of the opinion that Backer's testimony, coupled with the repair orders, constituted sufficient evidence to defeat the need for expert testimony; therefore, the trial justice erred in directing a verdict on count 1 of the complaint on these grounds.

The trial justice also considered the seasonableness of the revocation in granting the directed verdict on count 1. Although the trial justice recognized that the reasonableness of the length of time that passed before Backer revoked his acceptance is generally a matter to be resolved by a jury, he determined that a jury could not reasonably find that the revocation was seasonable, relying on the facts presented. The trial justice concluded that a revocation made at the end of 1982, or perhaps even mid–1983, may have been acceptable, but in waiting until November or December of 1983, the revocation was not timely as a matter of law. We find this conclusion of the trial justice to be erroneous.

■ We do not agree that a revocation of acceptance of a motor vehicle thirty months after the initial acceptance after the buyer has put 38,000 miles on the car constitutes an unseasonable revocation as a matter of law. Section 6A–2–608 permits a buyer to revoke his acceptance if, in accepting the commercial unit, he reasonably assumed that the nonconformity would be

seasonably cured and if the problem is not in fact remedied in a timely manner.

In determining the timeliness of this particular revocation, we cannot discount Backer's attempts to cure the defects inherent in the vehicle. By consistently repairing the car at little or no cost to Backer, even though the warranty had expired, Fournier induced reliance by Backer and is therefore partially responsible for the lengthy period that passed before the revocation. The record reflects that the delay in revoking the acceptance of the automobile is largely attributable to Fournier's reassurances that it could and would fix the car.

After reviewing the facts and Fournier's policies in this instance, we are of the opinion that the trial justice did not consider the evidence in the light most favorable to plaintiffs and that he drew inferences contrary to Backer's position. Therefore, the decision to direct a verdict for defendants on count 1 was erroneous.

■ The plaintiffs also appeal the trial justice's decision to grant a directed verdict on count 2 of the complaint regarding Fournier's breach of the implied warranty. The trial justice found that the implied warranty in question was effectively disclaimed by Fournier. It was determined that the disclaimer was conspicuous as it appeared in all capital letters in close proximity to Backer's signature, and the order containing the disclaimer gave Backer fair and reasonable notice that the document was not binding to either party. We agree that to be effective, a disclaimer of warranty must be conspicuous; however, according to §§ 6A–2–316 and 6A–2–329, the fact that a disclaimer is conspicuous and has been examined by the purchaser is not sufficient to constitute a disclaimer.

Pursuant to § 6A–2–329(2)(b):

"No consumer sale on an 'as is' or 'with all faults' basis shall be effective to disclaim the implied warranty of merchantability, or where applicable, the implied warranty of fitness, unless a conspicuous writing clearly informs the buyer prior to the sale, in simple and concise language each of the following:

(1) The goods are being sold on an 'as is' or 'with all faults' basis; and

(2) The entire risk as to the quality and performance of the goods is with the buyer."

The meaning of the language must be clear to the buyer in addition to being conspicuous.

We find that the disclaimer at issue is ambiguous. It reads as follows:

"All warranties, if any, by a manufacturer or supplier other than dealer are theirs, *not* dealer's, and only such manufacturer or other supplier shall be liable for performance under such warranties. Unless dealer furnishes buyer with a separate written warranty or service contract made by dealer on its own behalf, dealer hereby disclaims all warranties, express or implied, including any implied warranties of merchantability or fitness for a particular purpose:

(a) On all goods and services sold by dealer, and

(b) on all used vehicles which are hereby sold 'as is—not expressly warranted or guaranteed.'"

Initially, through this disclaimer, Fournier shifts the obligation of honoring all warranties pertaining to Backer's new Renault 18i to the manufacturer. In the next sentence Fournier refers to its policy of honoring only those warranties and service contracts it executes on its own behalf. These statements are inconsistent in that one refers to existing warranties and the other disclaims those existing warranties but provides for alternative warranties. The final statement of the disclaimer is ambiguous on its face in that it disclaims all warranties on "all goods and services" sold by Fournier and then it employs restrictive language limiting the disclaimer to "all used vehicles which are hereby sold 'as is—not expressly warranted or guaranteed.'" It is not clear whether Fournier intends to disclaim all warranties running to every automobile it sells or just to those used vehicles sold "as is" that are not expressly warranted. We find that this language is ambiguous; therefore, it does

not constitute an effective disclaimer of the implied warranty of merchantability.

■ The trial justice went beyond the language and presentation of the disclaimer and established that expert testimony was necessary to prove that the vehicle in question was indeed not "fit for the ordinary purposes for which such goods are used." The trial justice based this determination on this court's findings in *Electric Terminal Corp. v. Cessna Aircraft*, 520 A.2d 144 (R.I.1987). In *Electric Terminal* we concluded that "the lack of expert testimony on the question of the fitness of the aircraft or its engines at the time of sale by the defendants is certainly in and of itself fatal." *Id.* at 147. The present matter is distinguished from *Electric Terminal* in that it concerns a passenger automobile, not an "aircraft or its engines." Although the average automobile owner possesses sufficient knowledge to attest to defects and mechanical malfunctions that prevent him or her from operating his or her automobile for the purpose for which it is purchased, the average person does not necessarily know enough about the mechanical defects of airplane engines to offer an informed opinion regarding the fitness of an aircraft. In addition the plaintiff in *Electric Terminal* failed to present any evidence of the aircraft's maintenance history whereas, in the present matter, Backer produced the service and maintenance receipts issued by Fournier. The uncontroverted testimony and evidence of repairs reflected in the record constitute sufficient proof to enable a jury to determine whether this particular automobile was fit for the purpose for which it was purchased. As previously stated, we are of the opinion that expert testimony is not required in this instance.

■ Finally plaintiffs appeal the trial justice's decision that insufficient evidence had been presented to establish that the car was in fact manufactured after July 4, 1975, and therefore protected by the Magnuson–Moss Warranty Act. The trial justice examined the testimony and documents offered by plaintiffs and determined from the evidence presented that he could not infer that the vehicle was new in 1981 or that it had been manufactured after July 4, 1975.

The vehicle in question was represented by Fournier as a new 1981 Renault 18i. The sales documents and testimony reflect that the car was a 1981 model. This court has determined that a legitimate and reasonable inference is one that is *"more* natural and plausible" as well as more probable than others that may be drawn from the same evidentiary facts. *Labbe v. Hill Brothers, Inc.*, 97 R.I. 269, 274, 197 A.2d 305, 308 (1964); *see also Fricke v. Fricke*, 491 A.2d 990, 994 (R.I.1985); *Stachurski v. Stachurski*, 488 A.2d 686, 687–88 (R.I. 1985). From the evidence presented in the record, the trial justice should have reasonably inferred that the 1981 vehicle was manufactured subsequent to 1975. We are of the opinion that the record reflects sufficient support for this inference, and therefore, expert testimony was not necessary in this instance. Because he failed to view the evidence in the light most favorable to the plaintiffs, the trial justice erred in directing a verdict for Fournier on this issue.

For the reasons stated, the appeal of the plaintiffs is sustained, and the papers in this case may be remanded to the Superior Court for further proceedings consistent with this opinion.

SHEA, J., did not participate.